UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ARTHUR KAY, ) | |
| ) | |
| Plaintiff, ) | Case No. CV 16-2399 AJW |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF DECISION |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff seeks reversal of the decision of defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying plaintiff's applications for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their respective contentions.

**Administrative Proceedings**

On September 30, 2012, plaintiff filed his SSI benefits application alleging that he had been disabled since February 1, 2009. [See Administrative Record ("AR") 19, 145-151]. In an October 28, 2014 written hearing decision that constitutes the Commissioner's final decision in this matter, the Administrative Law Judge ("ALJ") noted that plaintiff previously had been found disabled for a closed period, from February 3, 2009 through March 21, 2011, and that this period of disability was found to have ended due to medical improvement as of March 22, 2011. [See JS 2; AR 21; see AR 56-60]. The ALJ further determined that

plaintiff had not rebutted the presumption of continuing non-disability arising from the prior, final administrative decision that he was not disabled as of March 22, 2011. The ALJ further found that plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work, and that plaintiff's RFC did not preclude performance of his past relevant work as a taxi driver. [AR 22-23]. Accordingly, the ALJ found plaintiff not disabled at any time from September 30, 2012 through the date of the ALJ's decision.[1] [AR 23].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Presumption of continuing non-disability**

Although applied less rigidly to administrative than to judicial proceedings, the principles of res judicata apply to administrative decisions. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). A prior, final determination that a claimant is not disabled creates a rebuttable presumption that the claimant retains the ability to work after the date of the prior administrative decision. See Schneider v. Comm'r of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir.

---

[1] SSI benefits are not payable prior to the month following the month which the claimant's application is filed, regardless of the date of onset. See 20 C.F.R. §§ 416.330, 416.335. Therefore, the relevant period was September 30, 2012 through October 28, 2014, the date of the ALJ's decision.

2000); Lyle v. Sec'y of Health & Human Servs., 700 F.2d 566, 567 (9th Cir. 1983). This presumption of "continuing non-disability" may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment, or where the claimant's unrepresented status has resulted in an inadequate record. Lester, 81 F.3d at 827-828; Chavez, 844 F.2d at 693. The Ninth Circuit has held that "all an applicant has to do to" to rebut the presumption of continuing non-disability is to "raise a new issue in the later proceeding," even one that the ALJ finds not severe. Vasquez v. Astrue, 572 F.3d 586, 598 (9th Cir. 2009) (holding that the ALJ erred in applying the presumption of continuing nondisability where the claimant alleged a mental impairment not alleged in his earlier application, and where the claimant entered a different age category after the date of the prior ALJ's decision).

This case is controlled by Vasquez. Plaintiff rebutted the presumption of continuing non-disability simply by alleging new impairments in his current application that were not raised in his prior application, namely, low back arthritis and bilateral knee arthritis (both of which the ALJ found to be severe). [See AR 21, 56-50]. See Vasquez, 572 F.3d at 598 (holding that the allegation of a new impairment was sufficient to rebut the presumption of continuing non-disability even though the ALJ found the new impairment not severe). Like the claimant in Vasquez, plaintiff also entered a new age category, "closely approaching advanced age," by turning 50 after issuance of the prior ALJ's decision on October 3, 2011, when plaintiff was 48. [See AR 56, 60]. See 20 C.F.R. § 416.963(d).

Having rebutted the presumption of continuing non-disability under Vasquez by alleging a new impairment, plaintiff did not waive his objection to the ALJ's application of the presumption by failing to raise it in his statement of disputed issues, as defendant contends. Since the ALJ improperly relied on the presumption but also proceeded with the sequential evaluation procedure, the ALJ's decision can stand only if her decision is otherwise free of harmful legal error and is based on substantial evidence in the record.

**Past relevant work**

Plaintiff contends that substantial evidence does not support the ALJ's finding that plaintiff has past relevant work as a taxi driver. [JS 4-11].

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). Substantial gainful activity ("SGA") is work activity that is usually done for pay or profit and that involves

doing significant physical or mental activities, taking into account the nature of the work, how well it is performed, whether it is performed under special conditions, self-employment, and time spent working. See 20 C.F.R. §§ 404.1572-404.1573, 416.972-416.973. "Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity. We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1); see Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) ("Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity.").

Plaintiff completed a work history report stating that his most recent job was as a taxi driver from June 1994 through January 2009. [AR 167, 169-170]. During the September 2014 hearing, plaintiff testified that it had been "at least five years maybe" since he last worked full-time, and that his job was "driving."[2] [AR 44]. While examining the vocational expert ("VE") during the hearing, the ALJ remarked that "looking at plaintiff's work history, it appears that he has earned income in the past 15 years on the detailed earnings." [AR 48]. The ALJ asked the VE whether she was "able to discern what position [plaintiff] held." [AR 48]. The VE testified that based on her review of the record, plaintiff had worked as a taxi driver, and the ALJ found that plaintiff had past relevant work as a taxi driver. [AR 48].

It is undisputed that plaintiff's social security earnings record reflects no earnings from employment or self-employment since 1993. [JS 5-6; AR 153-157]. Plaintiff contends that the ALJ's past relevant work finding is not supported by substantial evidence in the record because his earnings record reflects no earnings at the SGA level within the 15-year period before the hearing. Defendant contends that the ALJ was entitled to rely on plaintiff's testimony and work history report that he worked full-time as a taxi driver within the 15-year period before the hearing. Defendant also argues that plaintiff was represented by counsel during the hearing and should have raised any objection to the VE's testimony before the ALJ.

Since plaintiff consistently stated in his sworn testimony and work history report that he worked full-time as a taxi driver well within the relevant 15-year period, the ALJ was entitled to find that plaintiff

---

[2] Plaintiff also told the consultative internal medical examiner that he "last worked in 2009 as a driver." [AR 244].

performed that work during the relevant period. However, plaintiff's earnings record remains the "primary" and "presumptive" factor in determining whether plaintiff's work as a taxi driver was substantial and gainful. See 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1); Lewis, 236 F.3d at 515. Under the circumstances of this case, plaintiff's social security earnings record is conclusive evidence that he had no earnings from employment or self-employment during the 15-year period before the hearing. The fact that plaintiff stated on his work history report that he earned $200 per month working as a taxi driver between 1994 and 2009 is insufficient to amend or rebut his earnings record. See 42 U.S.C. §§ 405(c)(3); 20 C.F.R. §§ 404.802 et seq.; Chapman v. Apfel, 236 F.3d 480, 483-484, 486-487 (9th Cir. 2000).

The Commissioner may, however, "consider other information in addition to your earnings" in assessing whether SGA occurred. 20 C.F.R. § 404.1574(b)(3)(i)-(ii). The Commissioner "will generally consider other information in addition to your earnings if there is evidence indicating that you may be engaging in substantial gainful activity" notwithstanding earnings below the presumptive SGA level. 20 C.F.R. § 404.1574(b)(3)(ii); see Lewis, 236 F.3d at 515–516 ("The presumption that arises from low earnings shifts the step-four burden of proof from the claimant to the Commissioner. . . . With the presumption, the claimant has carried his or her burden unless the ALJ points to substantial evidence, aside from earnings, that the claimant has engaged in substantial gainful activity."). The regulations list five factors that may show substantial gainful activity: "the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work." Lewis, 236 F.3d at 515-516 (citing 20 C.F.R. § 404.1573, 416.973).

The hearing transcript and the ALJ's decision demonstrate that the VE and the ALJ relied on plaintiff's statements about his work history to conclude that his work as a taxi driver was past relevant work. Substantial evidence supports the ALJ's past relevant work finding. The nature of plaintiff's work as a taxi driver—a job commonly performed for pay or profit—and plaintiff's ability to perform the job successfully for many years indicate that the job was SGA. In his work history report, plaintiff stated that he spent his days driving people from one destination to another and helping them lift and carry groceries and luggage, and that he was paid for his work. Those statements describe the familiar job of taxi driver as routinely performed. Cf. Crites v. Weinberger, 364 F. Supp. 956, 960 (N.D. Tex. 1973) (holding that the claimant performed substantial gainful activity where his earnings were above the presumptive SGA level

and where, "[d]espite his impairments, plaintiff was not helpless and performed his work [as a taxi driver] in substantially the same manner as would a healthy person"). Plaintiff said nothing in his testimony or work history report suggesting that his work as a taxi driver was done under special conditions that would undercut a finding of SGA. There is no evidence as to whether plaintiff was an employee or self-employed as a taxi driver, so that factor is neutral. Finally, the amount of time spent at work supports a finding of SGA because plaintiff reported that he worked eight to ten hours a day, six days a week as a taxi driver from 1994 to 2009. [AR 43, 167, 169]. Cf. Lewis, 236 F.3d at 516 (holding that evidence that the claimant worked 20 hours per week for short periods in the past did not show that he could work 20 hours per week on a regular and continuing basis, as needed to rebut the earnings presumption of no SGA). Plaintiff's testimony and work history report are substantial evidence that plaintiff's work as a taxi driver was substantial, gainful activity of long duration that was performed within the relevant 15-year period and that therefore meets the definition of past relevant work.

Since plaintiff's contention that the ALJ erred in finding past relevant work as a taxi driver fails on the merits, it is unnecessary to address defendant's argument that plaintiff's hearing counsel should have challenged the VE's testimony before the ALJ.

**Plaintiff's mental impairments**

Plaintiff contends that the ALJ erred in finding that plaintiff's depression and anxiety were not severe. [See JS 11-16].

At step two of the sequential evaluation procedure, a claimant has the burden to present evidence of medical signs, symptoms and laboratory findings that establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996). A medically determinable impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; see 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Symptoms are the claimant's description of his or her impairment, while psychiatric signs

are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality. See 20 C.F.R. §§ 404.1520a(b), 404.1528(b), 416.920a(b), 416.928(b); see also Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1-*2.

If a claimant demonstrates the existence of a medically-determinable impairment, the ALJ must determine whether the impairment significantly limits the claimant's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). To evaluate the severity of mental impairments, the ALJ utilizes a "special technique," also referred to as the "psychiatric review technique." See 20 C.F.R. §§ 404.1520a, 416.920a. First, the ALJ evaluates a claimant's "symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If the ALJ finds that a medically determinable mental impairment exists, the ALJ then rates the claimant's degree of functional limitation in four "broad functional areas." See 20 C.F.R. §§ 404.1520a(c), 416.920a(c). At the time the ALJ rendered her decision, those four functional areas were: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. [See AR 22].[3] A rating of "none" or "mild" in the first three functional areas and "none" in the fourth area warrants a finding that the impairment is not severe, unless other evidence in the record indicates that the claimant is more than minimally limited in the ability to perform basic work activities. 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d) (2013).

The ALJ found that plaintiff had medically determinable depression, not otherwise specified, and anxiety, but that those impairments were not severe. The ALJ reasoned that the record indicated that plaintiff's mood disorder was related to situational concerns, such as lack of income due to his unemployment; that there was no evidence of treatment by a mental health professional; and that a consultative examiner opined that plaintiff had mild or no mental functional limitations. [AR 22]. The ALJ determined that plaintiff had no limitation in activities of daily living; mild limitation in maintaining social functioning; mild limitation in maintaining concentration, persistence or pace; and no episodes of deterioration or decompensation in work or work-like settings. [See AR 22].

---

[3] The relevant functional areas were revised effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed.Reg. 66138, at *66160, 2016 WL 5341732 (Sep. 26, 2016).

7

Even if the first two reasons articulated by the ALJ are insufficient to support her finding that plaintiff's depression and anxiety were not severe, as plaintiff contends, the consultative examiner's May 2013 opinion is substantial evidence supporting the ALJ's non-severity finding. [See AR 64-93, 252-256]. Nina Kapitanski, M.D., a board-certified psychiatrist, interviewed plaintiff and conducted a mental status examination. She opined that plaintiff had depressive disorder NOS and anxiety disorder NOS, and that those impairments occurred "status post car accident" in 2008 "with subsequent impaired quality of life secondary to financial and unemployment stressors." [AR 255]. Dr. Kapitanski found that plaintiff had no limitations in performing activities of daily living, mild difficulties maintaining social functioning, and mild difficulties maintaining concentration, persistence, or pace. [AR 255]. Dr. Kapitanski did not specifically rate episodes of decompensation, but nothing in her examination report suggests that she found evidence that such episodes occurred.[4] For example, Dr. Kapitanski noted that plaintiff had no history of psychiatric hospitalizations and was not undergoing psychiatric treatment. He had "no difficulty maintaining composure and even temperament," "mild difficulties focusing and maintaining attention," and an "adequate" level of personal independence. [AR 253, 255]. Plaintiff reported subjective "panic attacks" lasting from a couple minutes to a couple hours; he said that the most recent episode was three weeks earlier, but that he could go for years without having one. [AR 253]. Dr. Kapitanski did not reference panic attacks in her narrative assessment, nor did she diagnose a panic disorder. [AR 253]. She also opined that psychiatric treatment would "significantly improve" plaintiff's symptoms of depression and anxiety. [AR

---

[4] Episodes of decompensation are defined as

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.4 (2013).

255].

Plaintiff points out that Dr. Kapitanski found that plaintiff had a depressed mood and blunted affect, but neither Dr. Kapitanski nor any other medical provider opined that those mental status findings precluded plaintiff from performing basic work activities. Plaintiff also argues that the ALJ's step-two finding is flawed because Dr. Kapitanski's report includes an RFC assessment describing plaintiff as having "mild *to moderate* difficulties" in the ability "to handle the usual stresses, changes and demands of gainful employment." [AR 255]. The "to moderate" aspect of that RFC limitation appears somewhat inconsistent with Dr. Kapitanski's opinion that plaintiff had no more than mild limitations in the broad functional areas used to assess severity. Since, however, the severity of a mental impairment is measured with reference to only those four broad mental functional areas and does not require an evaluation of every work-related mental ability that an RFC may encompass, this partial apparent inconsistency does not deprive the ALJ's step-two finding of substantial support in the record. See Miller v. Barnhart, 72 F. App'x 622, 623 (9th Cir. 2003) ("An RFC is 'a more detailed assessment' of the [psychiatric review technique form].").

Moreover, the record contains additional substantial evidence in the record supporting the ALJ's finding of no severe mental impairment. Specifically, Dr. Mallare and Dr. Singh, the nonexamining state agency doctors who reviewed the psychiatric evidence, including Dr. Kapitanski's examination report, both opined that plaintiff had no severe mental impairment. [AR 64-93]. Therefore, the ALJ did not erroneously or arbitrarily substitute her own judgment for competent medical opinion on the issue of severity, as plaintiff contends. [See JS 14]. Substantial evidence supports the ALJ's finding that plaintiff's depression and anxiety were not severe.

**Subjective symptoms**

If the record contains objective evidence of an underlying physical or mental impairment that is reasonably likely to be the source of a claimant's subjective symptoms, the ALJ is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc.

Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. The ALJ "may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." Bray v. Comm'r of Social Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997). The ALJ's reasons for rejecting subjective testimony "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff testified as follows. He could not sit or stand for "too long" due to neuropathy causing a "pins and needles" sensation in his legs and feet, "real stiffness" in his back, and "a little bit" of stiffness in his neck, shoulders, and legs. [AR 42-43]. He could sit for about two hours at a time and stand for about an hour at a time before needing to walk around to relieve stiffness for ten or fifteen minutes. [AR 42-43]. His past work as a driver allowed him to take the breaks he required to accommodate his need to change positions. [AR 44]. He had trouble breathing, "like asthma," if he walked for a quarter mile or a half mile; doing so caused a feeling of heaviness in his chest that went away if he relaxed and breathed slowly for ten to twenty minutes. [AR 43]. Plaintiff could lift about ten pounds but doing so could cause pain if he did not stretch. [AR 24].

The ALJ articulated clear and convincing reasons based on substantial evidence in the record for finding plaintiff's subjective testimony not entirely credible. The ALJ cited medical evidence indicating that plaintiff's diabetes mellitus and hypertension had lessened in severity since the prior ALJ's decision and were stable on medication. Although there was some variation in the intensity of plaintiff's signs and symptoms of diabetes and hypertension, the treatment notes generally reflect that those conditions were stable and adequately managed on medication and with counseling regarding lifestyle changes when warranted, such as when plaintiff gained weight. [AR 24; see, e.g., AR 258-259, 387-398]. Treatment notes indicate that plaintiff had a normal deep vein thrombosis study, normal chest x-ray, intact muscle strength, and normal neurological and sensory examination. [AR 224, 417-418]. Treatment notes from the relevant period document a variety of conditions, such as psoriatic skin lesions, bilateral lower extremity edema, left

leg venous ulcers, and evidence of a fatty liver. [AR 224-226, 237, 295-479]. However, plaintiff has not shown how those treatment reports undermine the ALJ's evaluation of his subjective complaints or establish limitations beyond those found by the ALJ. The ALJ observed that plaintiff's treatment notes show that his psoriasis improved significantly after he was started on treatment with Enbrel, and that he was "[s]atsified with treatment and current control." [AR 22, 357-360, 425]. Even when there was some exacerbation in his psoriasis, he reported that it was "[o]ccasionally itchy, but not painful." [AR 431; see also AR 242-247 (March 2013 consultative examination report stating plaintiff complained of only "slight itching and scaliness" from his psoriasis)]. Progress reports showed venous ulcers during a June 2012 podiatry clinic visit; plaintiff received wound care, a referral for followup treatment, and was advised to wear compression stockings. [AR 224-225]. A dermatology clinic note dated about six weeks later showed bilateral lower extremity "hyperpigmentation, scale," but "no evidence of erosion or ulcers"; plaintiff was counseled to elevate his legs and use compression stockings. [AR 224-226]. The ALJ also remarked that there was no evidence of venous ulcers during the March 2013 consultative internal medical examination. [AR 22; AR 242-247]. In 2014, plaintiff was fitted for custom shoe orthotics due to diabetic peripheral neuropathy and callus. He reported that the orthotics were comfortable. [AR 437-438]. Plaintiff had some evidence of fatty liver and elevated liver enzymes with notations that he needed to change his diet and exercise more. [AR 268, 360, 416]. Improvement in his liver enzymes and fatty liver was noted during an April 2015 visit. [AR 475].

In evaluating plaintiff's subjective symptoms, the ALJ permissibly noted that no treating physician opined that plaintiff was more limited than the ALJ found. Moreover, the consultative internal medical examiner, John Sedegh, M.D., opined that plaintiff's impairments of hypertension, diabetes, low back and bilateral knee arthritis, psoriasis, and chest pain did not preclude him from performing a range of medium work. [AR 24-25, 242-247]. See Light, 119 F3d at 792 (stating that an ALJ may consider testimony from physicians concerning the nature, severity, and effect of a claimant's subjective symptoms).

Dr. Sedegh elicited a history and conducted a physical and neurological examination. [AR 242-246]. He also reviewed an x-ray of plaintiff's left knee, which was normal, and an electrocardiogram, which showed "sinus rhythm (slow) [intra-atrial] conduction delay borderline ECG." [AR 242-247]. Plaintiff complained of low back and bilateral knee pain that was worsened by prolonged walking, sitting, or

standing, but was relieved by changing positions. Plaintiff said that he currently used a cane provided by his physician for walking short and long distances. [AR 242]. He reported a history of non-radiating chest pain and shortness of breath with exertion but had not undergone treadmill testing. [AR 242, 244].

Plaintiff's physical and neurological examination were within normal limits except for limited range of motion of the lumbar spine and crepitus in both knees. [AR 242-247]. His blood pressure was 151/81, with no evidence of stroke or congestive heart failure. There was no evidence of sensory deficits from diabetes. He had patches of reddened skin on the arms, leg, and back due to psoriasis. His subjective chest pain with exertion suggested a cardiac origin. Dr. Sedegh opined that plaintiff did not need a cane as an assistive device and could perform medium work with no more than frequent kneeling, crouching, or stooping. [AR 24-25, 246-247]. Plaintiff has not pointed to any evidence in the record that a cane was prescribed by a physician. Plaintiff's visual acuity was 20/30 in both eyes with corrective lenses. [AR 251]. The ALJ did not err in relying on Dr. Sedegh's opinion to discredit plaintiff's subjective symptoms.

Another reason given by the ALJ to support her evaluation of plaintiff's subjective complaints was that plaintiff's treatment for his various impairments was "essentially routine and/or conservative in nature." [AR 24]. Although plaintiff's diabetes, hypertension, psoriasis, and leg ulcers required ongoing medical management and occasionally flared up, those impairments were conservatively treated with monitoring, medication, wound care, and advice regarding lifestyle changes. The record indicates that plaintiff was evaluated for bariatric surgery [e.g., AR 435], but there are no medical records indicating that the surgery was performed. The ALJ rationally inferred that plaintiff's treatment regimen was not commensurate with the allegedly disabling severity of his subjective symptoms. See Parra v. Astrue, 481 F.3d 742, 750-751 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ articulated clear and convincing reasons supported by substantial evidence for her evaluation of plaintiff's subjective symptom testimony.

//
//
//
//

**Conclusion**

For the reasons stated above, the Commissioner's decision is based on substantial evidence and is free of harmful legal error. Accordingly, the Commissioner's decision is **affirmed**.

**IT IS SO ORDERED.**

July 13, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge